# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 4298 | **DATE** | 8/18/2000 |
| **CASE TITLE** | WHITE etc et al vs. THE EMPLOYEE RETIREMENT PLAN OF AMOCO CORPORATION AND PARTICIPATING COMPANIES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted and plaintiffs' cross motion for summary judgment is denied. The second amended complaint is dismissed. This case is dismissed in its entirety. All other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | 8-21-00 | |
| | Notified counsel by telephone. | | date docketed | 90 |
| | Docketing to mail notices. | ED-7 FILED FOR DOCKETING | | |
| | Mail AO 450 form. | 00 AUG 21 AM 7: 47 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/18/2000 date mailed notice | |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | JS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VIRGINIA WHITE, as executrix of the
ESTATE OF ANDREW G. WHITE, and
J.D. ARNOLD, individually and on behalf of
all others similarly situated,

    Plaintiffs,

v.

THE EMPLOYEE RETIREMENT PLAN OF
AMOCO CORPORATION AND
PARTICIPATING COMPANIES,

    Defendant.

No. 96 CV 4298

DOCKETED
AUG 21 2000

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

    Plaintiffs Virginia White, as executrix of the estate of Andrew G. White, and J.D. Arnold ("Arnold"), individually and on behalf of all others similarly situated, filed a one-count second amended complaint against defendant The Employee Retirement Plan of Amoco Corporation and Participating Companies ("Plan"), claiming a violation of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1). On January 18, 2000, the parties stipulated to an Order for Class Certification, naming only plaintiff Arnold as the class representative.[5] Plaintiffs and defendant have each moved for summary judgment pursuant to Rule 56 of the Federal Rules of

---

[5] Because plaintiff Arnold is the only named class representative and his administrative record is the only record before the court, the circumstances surrounding the denial of Arnold's claim for additional benefits will only be considered by the court.

1

90

Civil Procedure. For the following reasons, plaintiffs' motion for summary judgment is DENIED and defendant Plan's motion for summary judgment is GRANTED.

## STATEMENT OF FACTS[6]

Plaintiff Arnold is a former employee of Amoco Corporation ("Amoco"). At all relevant times, Arnold is a participant in defendant Plan. The Plan is a single employer defined benefit pension plan regulated by ERISA provided for employees of Amoco. In 1995, Arnold elected to participate in Amoco's early retirement program. Arnold received a lump sum pension benefit from the Plan in the amount of $269,995.00 in connection with his election to participate in Amoco's early retirement program. Arnold submitted a claim for additional benefits under the Plan with the Plan Administrator on February 12, 1999, believing his lump sum benefit had been computed incorrectly and should have been greater. By letter dated August 10, 1999, the Plan Administrator, Craig Weaver ("Weaver") denied Arnold's claim. Arnold appealed the denial of his claim. On October 14, 1999, also by letter, Plan Administrator, John F. Campbell ("Campbell"), after reviewing the administrative record, affirmed the decision and denied the claim for additional benefits.

Plaintiffs filed this lawsuit on July 16, 1996. On January 18, 2000 the parties stipulated to an Order for Class Certification, naming plaintiff Arnold as the class representative. The class consists of the following:

> All participants and former participants in the Employee Retirement Plan of Amoco Corporation and Participating Companies ("Plan") who, during the period from April 1, 1993 to but not including October 1, 1996, retired with Plan benefits which included a pre-Social Security temporary annuity and who were less than age (60) on their retirement date.

---

[6] The following statement of facts comes from the parties' Local Rule 12(M) and (N) statements of material facts and accompanying exhibits. Effective September 1, 1999, the Local Rules were renumbered and now refer to states of material facts as Local Rule 56.1.

2

The Plan assert that summary judgment is appropriate because the decision denying Arnold's claim for additional benefits was not arbitrary and capricious. Plaintiffs argue that summary judgment in their favor as to liability is appropriate because the Plan failed to properly compute the early retirement benefits in accordance with the plain language of the Plan and applicable documents.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

## ANALYSIS

The Employment Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA") is the federal statute governing the administration of employee benefit plans. "An employee benefit plan" is a plan established for the purpose of providing retirement income to employees. 29 U.S.C.

3

§ 1002(2)(1). The Plan is an "employee pension benefit plan" within the meaning of ERISA. Section 502(a)(1)(b) of ERISA allows a beneficiary of an employee benefit plan to bring a civil action to recover benefits due to him or her under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). The beneficiary must establish, however, that he or she "has satisfied the conditions necessary for benefits under the plan." Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1133 (7th Cir. 1992).

I. Standard of Review of the Plan Administrators' Decisions

A court reviews the denial of benefits de novo unless the benefit plan confers power on the plan administrator to exercise discretion to determine eligibility for benefits, in which case the court must decide whether the denial was arbitrary and capricious. Ramsey v. Hercules, Inc., 77 F.3d 199, 202-03 (7th Cir. 1996). The Seventh Circuit has found that there are "no magic words" that confer discretion on a plan administrator. Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000); Chojnacki v. Georgia-Pacific Corp., 108 F.3d 810, 814 (7th Cir. 1997).

Plaintiffs argue that this court must review denial of benefits under a plenary or de novo review standard. Plaintiffs claim that the Plan Administrators who denied Arnold's claim had a conflict of interest. Plaintiffs also argue that the Plan did not confer upon the Plan Administrators the power of discretionary judgment on when benefits shall be paid. The Plan argues that there is no evidence in the administrative record indicating the Plan Administrators had a conflict of interest. The Plan also argues that the Plan's language confers discretionary authority on the Plan Administrators such that this court must engage in an arbitrary and capricious review of the Plan Administrators' decisions. Before turning to the merits of plaintiffs' claim, the court must first address the proper scope it will review the Plan Administrators' decisions to deny Arnold's claim for additional early retirement benefits.

A. <u>Discretionary Judgment of Plan Administrators</u>

Recently, the Seventh Circuit clarified its position on the issue of whether a court should defer to a plan administrator's decision because the plan documents confer power of discretionary judgment on the administrator or engage in a de novo review of the denial of benefits. See <u>Herzberger</u>, 205 F.3d at 330. In <u>Herzberger</u>, the Seventh Circuit sought to make "uniform" the language needed in an ERISA policy in order for the courts to review the decision of the plan administrator under an arbitrary and capricious standard. <u>Id.</u> at 329. To assist in clarifying its position, the Seventh Circuit drafted "safe harbor" language for employers to include in an ERISA policy in order to insure application of the arbitrary and capricious standard. <u>Id.</u> at 331. It states, "[b]enefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." <u>Id.</u>

In this case, however, the Plan did not have the benefit of the <u>Herzberger</u> decision, as the plan language does not include the "safe harbor" language. So, the court must look further a determine whether the Plan's language "'signaled the subjective, discretionary character of judgment that was to be made.'" <u>Id.</u> (quoting <u>Donato v. Metropolitan life Ins. Co.</u>, 19 F.3d 375, 379 (7th Cir. 1994)). The Seventh Circuit made clear though that the "safe harbor" language is not mandatory because "in some cases it will be reasonably clear that the plan administrator is to exercise discretion." <u>Id.</u> The court must keep in mind that while an ERISA plan may specify that the administrator has discretion in interpreting or applying the plan, "the conferral of discretion is not to be assumed." <u>Id.</u> "The mere fact that a plan requires a determination of eligibility . . . or requires proof or satisfactory proof of the applicant's claim" does not give an employee sufficient notice that the plan administrator has discretionary power largely insulated from judicial review. <u>Id.</u> Rather, if an ERISA plan stipulates

5

deferential review, the stipulation must be clear. Id. at 332.

In this case, the Plan gives Plan Administrators the authority "[t]o interpret the Plan, to determine applicable facts, and to decide all matters arising under the Plan, including the right to exercise discretion to remedy possible ambiguities, inconsistencies, and omissions." The court believes this language confers sufficient discretion to invoke the arbitrary and capricious standard of review. Participants of the Plan are given adequate notice that it is within the discretion of the Plan Administrators to approve or deny benefits. Plaintiffs argue that the Plan language departs form the safe harbor language drafted by the Seventh Circuit in one critical way--namely that it fails to refer to benefit determinations. Yet, the court does not read Herzberger to specifically require an indication that benefits will be considered under the stated language. Rather, this Plan language makes clear that in "all" decisions by Plan Administrators will be exercised in discretion. In fact, the Plan states Plan Administrators have the authority to decide all matters arising under the Plan with discretion. This language certainly encompasses benefit claims. Moreover, while the Plan language does not specifically indicate that a judgment by the Plan Administrator is largely insulated from judicial review by reason of being discretionary, this court does not believe exact language in that respect is needed to find a plan's language sufficient to invoke the arbitrary and capricious standard. In fact, the drafted "safe harbor" language written by the Seventh Circuit in Herzberger does not contain any language which, this court believes, would reasonably inform the participant that a plan administrator's judgment is insulated from full review by a court.

Thus, this court finds the language in the Plan, while not entirely clear, "indicates with the requisite if minimum clarity that a discretionary determination is envisaged." Herzberger, 205 F.3d at 331. Therefore, the court will review the Plan Administrators' decisions to deny Arnold

additional early retirement benefits under the arbitrary and capricious standard.

B. Conflict of Interest

Plaintiffs also argue that this court should view the Plan Administrators' decisions with skepticism because they were operating under a conflict of interest in that Amoco would benefit in an amount estimated to exceed $10 million dollars if the defense of this lawsuit is successful. In other words, plaintiffs argue that this alleged economic conflict of interest should be weighed as a factor in determining whether the administrator or fiduciary acted arbitrarily or capricious. Plaintiffs, however, fail to provide any evidence of a conflict of interest. Plaintiffs merely make the conclusory statement that "the economic conflict addressed in Firestone exists" in this case. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948 (1989).

A court must presume a fiduciary is acting neutrally unless a claimant can show by providing specific evidence of actual bias or a significant conflict of interest. Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan, 144 F.3d 1014, 1020 (7th Cir. 1994). If the corporation's financial interests were a cause for concern, ERISA would take measures to prohibit corporate officers from serving as plan administrators. Chamblers v. Quaker Oats Co., 61 F.3d 1340, 1344 (7th Cir. 1995) Therefore, without specific evidence, the court finds no need to engage in a heightened arbitrary and capricious standard of review.

II. Application of Arbitrary and Capricious Standard

Under the arbitrary and capricious standard, a court must uphold a plan administrator's decision so long as that decision is based on a reasonable interpretation of the plan's language and the evidence in the case. Daill v. Sheet Metal Workers' Local 73, 100 F.3d 62, 68 (7th Cir. 1996). All questions of judgment are left to the plan administrator, and a court must be very confident that

7

the plan administrator overlooked something important or seriously erred in appreciating the significance of the evidence to overturn the plan administrator's determination. Patterson v. Caterpillar, Inc., 70 F.3d 503, 505 (7th Cir. 1995). In other words, a plaintiff must show that the plan administrator not only made the wrong call, but he or she made a "downright unreasonable one." Chojnacki, 108 F.3d at 816. Review under this standard is, however, not without some teeth. Cozzie v. Metropolitan Life Ins. Co., 140 F.3d 1104, 1107-08 (7th Cir. 1998).

What appears to be the dispositive issue before this court is whether the Plan Administrators acted unreasonably in computing the early retirement benefits by requiring the accrued annuity benefit be reduced by the reduction factor after applying the upward adjustment for the pre-social security temporary annuity. Applying the above-stated standard, this court concludes that the Plan Administrators' interpretation of the Plan documents in computing the early retirement benefits to require that the accrued annuity benefit be reduced by the reduction factor after applying the upward adjustment for the pre-social security temporary annuity was not arbitrary and capricious.

Here, the Plan does not precisely define an accrued annuity benefit in the early retirement context. Rather, one must pierce through the language of the Plan to determine the proper scope of an accrued annuity benefit in the early retirement context. The Plan defines an "accrued annuity benefit" as "the annual single life annuity accrued, whether or not vested, at any time for a Participant which becomes payable upon the Participant attaining Normal Retirement Age. The amount is calculated under Article V of the Plan." Section V of the Plan states that participants are entitled to Accrued Annuity benefits subject to sections 5.01, 5.03, and 5.04 of the Plan.

Section 5.01 sets forth the formula for "Accrued Annuity Benefit" and states in pertinent part: the monthly Normal Retirement Benefit for a Participant . . . will equal one-twelfth of the

8

sum of (i) and (ii): (i) 1-2/3% of Final Average Pay, multiplied by (ii) Benefit Service; offset by the product of (iii) and (iv): (iii) 1-1/2% of the Participant's Primary Insurance Amount (PIA) which he is entitled to receive under the Social Security Act, multiplied by (iv) Benefit Service.

Section 5.05(a)(i) further sets forth the proper annuity income for early retirees in order to take into consideration the proper adjustments needed. Section 5.05(a)(i) states:

> The Accrued Annuity Benefit under section 5.02, together with the career average minimum supplement and/or service minimum supplement shall be adjusted to provide for a pre-Social Security temporary annuity (as described in subsection 5.05(a)(ii) below) and shall be calculated based upon the Early Retiree's actual years of Benefit Service and such Early Retiree's actual retirement date. The Accrued Annuity Benefit for an Early Retiree whose Annuity Starting Date is prior to age 60 shall be reduced in accordance with the reduction factors set forth in Section 5.07 of the Plan prior to applying the adjustment for a pre-Social Security temporary annuity.

In addition, the summary plan description ("SPD") that governs the Plan as amended and restated in 1994, stated "[o]ne of the plan features that permits employees to retire early is an additional benefit called the temporary annuity supplement. . . . equal to your retirement Social Security benefit that would otherwise be offset." (Admin. Rec. Ex. A7, at 57). The SPD then provided a mathematical example of how an early retirement benefit is calculated for a 53 year old. The mathematical example is set forth in the SPD as follows:

| | | | |
|---|---|---|---|
| Average Monthly Pay | | | $3,750 |
| *times* | | | |
| 25 Years of Benefit Accrual Service x 1.6667% | | x | .4167 |
| | | | $1,563 |
| *times* | | | |
| Age Reduction Factor for 53 Years Old (7 years @ 5% per year) | | | .65 |
| | | | $1,016 |
| *less* | | | |
| Primary Age 62 Social Security Benefit | $720 | | |
| *times* | | | |
| 25 Years of Benefit Accrual Service x 1.5% | x | 37.5% | |
| Social Security Offset Amount | | $270 | -$ 270 |
| *equals* | | | |

9

| | |
|---|---|
| Monthly Annuity Payable for Life at 53 Years of Age | $ 746 |
| *plus* | |
| Temporary Annuity Payable to Age 62 | $ 270 |
| *equals* | |
| Total Plan Benefit Payable to Age 62 on a Single-Life Basis | $1,016 |

(Admin. Rec. Ex. A7, at 58).

Plaintiffs argue that the unambiguous language of the Plan contemplates the Accrued Annuity Benefit would be an amount computed by taking the normal retirement benefit and reducing it by the Social Security Offset. Yet, plaintiffs ignore the direct import of the SPD. As noted by the Plan, Arnold's benefits for his early retirement was calculated under the same formula set forth in the SPD. That example provided that the pre-Social Security temporary annuity canceled the Social Security offset. Thus, the Plan Administrators' conclusions to deny Arnold's claim for additional early retirement benefits is undisputedly supported by the SPD, which Arnold admittedly received.

Normally, a court will only look to the plan language to determine if an agreement is ambiguous. However, under limited circumstances, a court may look to objective extrinsic evidence to demonstrate that an otherwise unambiguous contract contains an ambiguous provision. Mathews v. Sears Pension Plan, 144 F.3d 461, 466 (7th Cir. 1998). This doctrine of extrinsic ambiguity applies only to single-employer ERISA pension plans. Id. Moreover, in order for the doctrine to apply, the extrinsic evidence must be objective; it must not depend on the credibility of testimony of an interested party. Id. at 467.

Here, the extrinsic evidence of the SPD meets the objective requirement.[7] The SPD, while

---

[7] The Plan also offers other evidence which it claims establishes the Plan Administrators' decisions were not arbitrary and capricious. The court must ignore that evidence, however, because it is not objective evidence, as it requires a trier of fact to credit oral testimony of an interested party.

10

it was not prepared at the same time as the agreement, it was restated when the ERISA plan was amended in 1993, and existed well before this dispute arose. Moreover, SPDs form integral parts of pension plan documents and should be considered when determining whether an employer intended welfare benefits. See Mathews, 144 F.3d at 468 (plan summary is presumptively reliable guide to the contents of the plan itself); Ryan v. Chromalloy American Corp., 877 F.2d 598, 601, 603 (7th Cir. 1989). Thus, it is proper to examine the SPD to reveal an ambiguity in the agreement.

Here, as noted above, the SPD supports the Plan's contention that an early retiree's basic benefit would be reduced prior to the adjustment for the Social Security offset and the pre-Social Security temporary annuity, thereby the pre-Social Security temporary annuity would cancel the Social Security offset. Thus, the SPD shows the Plan language's ambiguity surrounding the accrued annuity benefit calculation. So, even if the language of the agreement is not intrinsically ambiguous as plaintiffs contend, the objective extrinsic evidence shows the agreement can be reasonably interpreted in more than one way.[8] Therefore, the Plan Administrators could interpret the Plan language, coupled with the SPD, to calculate the early retirement benefits as they did, without being arbitrary and capricious. And, in doing so, it would not be unreasonable for the Plan Administrators to deny Arnold's claim for additional early retirement benefits. Consequently, the decisions of the Plan Administrators cannot be overturned on the basis of them being arbitrary and capricious. Therefore, defendant Plan's motion for summary judgment is GRANTED. Plaintiffs' motion for summary judgment is DENIED.

---

[8] Because the court found extrinsic evidence established an ambiguity, this court need not address the Plan's other argument that the Plan language is also ambiguous.

## CONCLUSION

For the above stated reasons, defendant Plan's motion for summary judgment is GRANTED and plaintiffs' cross motion for summary judgment is DENIED. This court dismisses plaintiffs' second amended complaint. This case is dismissed in its entirety. All other pending motions are MOOT.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: August 18, 2000