Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 4298 | **DATE** | 10/9/2001 |
| **CASE TITLE** | WHITE etc et al vs. EMPLOYEE RETIREMENT PLAN OF AMOCO | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, plaintiffs' petition for fees is granted in part. Class counsel is awarded $266,864.00 in attorneys' fees, costs, and expenses from the Settlement Fund.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | OCT 10 2001 date docketed |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | CM docketing deputy initials |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | 10/9/2001 date mailed notice |
| JS | courtroom deputy's initials | JS mailing deputy initials |

FILED FOR DOCKETING 01 OCT -9 PM 4:27

Date/time received in central Clerk's Office

Document Number 117

DOCKETED
OCT 1 0 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VIRGINIA WHITE, AS EXECUTRIX OF THE ESTATE OF ANDREW G. WHITE and J.D. ARNOLD, individually and on behalf of other similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>THE EMPLOYEE RETIREMENT PLAN OF AMOCO CORPORATION AND PARTICIPATING COMPANIES,<br><br>Defendant. | ) | No. 96 C 4298 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On August 29, 2001, Mr. Bradford T. Yaker filed a Petition for Award of Attorneys Fees and Costs ("Petition") in this case purportedly on behalf of his current law firm Hertz, Schram & Saretsky, P.C. located at 1760 South Telegraph Road, Suite 300, Bloomfield Hills, Michigan.[1] When Mr. Yaker initially appeared for plaintiff, he was with the now dissolved law firm of Keck, Mahin & Cate in Chicago, Illinois. His then co-counsel was Mr. Allen C. Engerman, who is both a member of the general bar and the trial bar of this court. Mr. Engerman withdrew his appearance on March 31, 1998. Mr. Yaker at some time relocated his law practice to this current firm but never

[1]Mr. Yaker is a member of the general bar of the Northern District of Illinois, but not the trial bar, and should know that under Local Rule 83.16(c) appearances by firms are prohibited.



117

filed a change of address form with this court. On January 18, 2000, when this court certified the class and Mr. J.D. Arnold ("Arnold") as the class representative, that stipulation which the court signed because counsel for the parties had agreed also stated:

> "7. In addition, Bradley J. Schram, Robert Geller and Bradford T. Yaker of Hertz, Schram & Saretsky, P.C., Bloomfield Hills, Michigan, Allen C. Engerman of the Law Office of Allen C. Engerman, Ltd., Northbrook, Illinois, and Kevin Tottis of Law Offices, Chicago, Illinois, are hereby appointed as counsel to the class." (R. 68, p. 2-3).

Mr. Yaker who signed the January 18, 2000 stipulation on behalf of the class did not inform the court at that time that Mr. Schram and Mr. Geller were not members of the bar of this federal district court. Neither Mr. Schram nor Mr. Geller ever filed an appearance in this case. Mr. Engerman, who had withdrawn on March 31, 1998, never filed an appearance again. Messrs. Schram and Geller are seeking recovery of fees in the Petition. Mr. Engerman is not. For purposes of reference, Mr. Yaker, Mr. Schram and Mr. Geller will be referred to collectively as "Plaintiffs' Michigan Counsel" and together with plaintiffs' Chicago counsel, Mr. Kevin Tottis, will be referred to collectively as "Class Counsel."

The Petition seeks to have this court award attorneys' fees, costs and expenses to Class Counsel. The costs and expenses sought in the Petition total $17,256. The attorneys' fees sought by the Petition are thirty-three percent of the $2,200,000 settlement fund ("Settlement Fund") to which Class Counsel and defendant's counsel have agreed to settle this case. In other words, Class Counsel seek $726,000 in fees plus $17,256 in expenses. Those amounts are unreasonable. As further explained below, the court finds that Class Counsel are entitled to reasonable attorneys' fees, as calculated under the lodestar method and increased by an appropriate risk multiplier, of $255,298 and reimbursement of expenses, including costs, of $11,566.

## BACKGROUND

On July 16, 1996, the initial plaintiff in this case, Mr. Andrew G. White ("Mr. White"), instituted this action through his counsel to pursuant to the Employee Retirement Income Security Act ("ERISA") by filing a class action complaint against defendants Amoco Corporation ("Amoco") and the Employee Retirement Plan of Amoco ("Plan"). Amoco was dismissed as a defendant on January 8, 1997. In March 1997, Mr. White died and his widow, Virginia White ("Ms. White"), sought to prosecute this action in her capacity as executrix of the Estate of Andrew White. In November 1997, Ms. White through her counsel sought certification of a class with herself designated as class representative of a purported class of persons who participated the Plan. The court denied Ms. White's motion for class certification on April 13, 1998 because there existed an irreconcilable conflict of interest between Ms. White's role as executrix and Ms. White's role as a putative class representative.

On August 3, 1998, plaintiffs' counsel filed a second amended complaint adding J. D. Arnold ("Arnold") as a plaintiff and putative class representative. On August 4, 1998, the Plan moved to stay the case because Arnold had not exhausted his administrative remedies with the Plan. Plaintiffs' counsel opposed that motion and once again sought class certification. The issue was briefed and the case was stayed on December 22, 1998. Arnold exhausted his administrative remedies under the Plan and the case was reinstated on December 3, 1999. On January 18, 2000, the court pursuant to Fed. R. Civ P. 23(b)(1), certified the class to which counsel for the parties had stipulated, and in that same stipulated order appointed Class Counsel to represent the class.

Plaintiffs alleged that the Plan failed to compute the early retirement benefits applicable to Arnold, Andrew G. White, and the other members of the class in accordance with the express terms of §5.05 of the Plan, as amended effective April 1, 1993. Plaintiffs alleged that by deviating from the terms of §5.05, the Plan paid plaintiffs and the other class members substantially less than their entitlement. On August 18, 2000, this court granted summary judgment in favor of the Plan and against the class as to the issues to which counsel for the parties had not been able to reach an agreement.

On September 14, 2000, plaintiffs filed a notice of appeal, and on October 25, 2000, with the assistance of a settlement conference attorney of the United States Court of Appeals for the Seventh Circuit, the parties negotiated the proposed common fund class settlement of $2,200,000. That proposed class settlement was preliminarily approved by this court on July 26, 2001, and notice to the class members was ordered to be provided pursuant to Fed. R. Civ. P. 23(e). A hearing as to the fairness of that settlement was held on October 9, 2001, and the settlement was approved.

## STANDARD OF REVIEW

"Determination of a fee award is left to the discretion of the district court in light of its 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" Eddleman v. Switchcraft, Inc., 965 F.2d 422, 424 (7th Cir.1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941 (1983)). The party requesting the fee award bears the burden of substantiating, to this court's satisfaction, the requested hourly rate as well as the hours expended. McNabola v. Chicago Transit Auth., 10 F.3d 501, 518 (7th Cir. 1993).

## ANALYSIS

I. Methodology in Determining Fees

In common fund cases, the decision whether to use a percentage method or a lodestar method is within the sole discretion of the district court. Cook v. Niedert, 142 F.3d 1004, 1012 (7th Cir. 1998)(citations omitted). The object in awarding a reasonable attorney's fee is to provide a lawyer what the lawyer would have received by way of a fee agreed upon in an arm's length negotiation. In re Continental Illinois Securities Litigation, 962 F.2d 566, 572 (7th Cir. 1992). So a district court judge must step in and play the role of surrogate client. Id.

In acting as a surrogate client the court believes, the lodestar method of computing attorneys' fees is preferable over the percentage method in a case which as been settled because the lodestar method prevents over-compensating attorneys from their clients' funds. The lodestar method requires an explicit accounting by counsel of their hours and rates providing greater accountability to the clients by counsel. Florin v. Nationsbank of Georgia, N.A., 34 F.3d 560, 566 (7th Cir. 1994). In addition, the lodestar method provides, in theory at least, a means of accounting both for the hours and the reasonable hourly rate in a particular case as well as for the risk an attorney assumes in undertaking a case. Id. This court finds that using the percentage sought by Class Counsel in this case 33% of the $2,200,000 Settlement Fund would lead to over-compensation of Class Counsel, despite the simplicity in administration of the percentage method. The court believes the lodestar method would better protect the interests of the class while still adequately compensating Class Counsel. Therefore, the court will use the lodestar method in calculating Class Counsel's reasonable fees and add an appropriate multiplier to the lodestar figure.

## II. Application of the Lodestar Method

### A. Total Hours Spent

The first step in determining a reasonable fee using the lodestar method is to calculate the lodestar: the number of hours reasonably expended on the case times the reasonable hourly rate of the attorneys reasonably involved. Mr. Yaker certified under oath in his affidavit attached to the Petition that approximately 1,131.90 hours were spent by people at the Hertz law firm and 160 hours were spent by Mr. Tottis. Mr. Yaker also certified that Mr. Tottis has already been paid $35,000. The Plan argues that the $35,000 paid to Mr. Tottis should not be included in the lodestar figure because Class Counsel failed to provide proper information documenting Mr. Tottis' contribution to the prosecution of this case. In addition, the Plan argues that the 59.3 hours spent by Class Counsel pursing Ms. White certification as class representative, and the 41.15 hours spent opposing the Plan's motion to stay the case until Arnold exhausted his administrative remedies should be deducted from the lodestar figure as work not reasonably undertaken. The Plan did not oppose any other hours submitted by Class Counsel, but the court notes again that it is the court's job to protect the interests of the class members, not the Plan's, against any unreasonable requests by Class Counsel for fees.

With Class Counsel's October 2, 2001 reply, Class Counsel belatedly submitted the purported time sheets of Mr. Tottis. No affidavit from Mr. Tottis accompanied the submission. In that reply, Class Counsel also argued that the time spent by Class Counsel in unsuccessfully seeking approval of Ms. White as class representative should be compensated since that time was appropriately spent in good faith, as was the time spent by Class Counsel in unsuccessfully arguing class representative Arnold did not have to exhaust his administrative remedies to be able to serve

properly as class representative.

1. Mr. Tottis' Fees

Mr. Yaker stated in his affidavit attached to his August 29, 2001 Petition that: "Mr. Tottis spent approximately 160 hours. . . . Mr. Tottis' has been paid in excess of $35,000 for his services as co-counsel." (Pet. Ex. A, p.5 ¶4). Mr. Yaker stated in Class Counsel's October 2, 2001 reply, which included Mr. Tottis' bills as an exhibit, that in his opinion: "The total value of the attorney time of Mr. Tottis is $31,580.41." (Reply, p.5). Any payment to Mr. Tottis will be excluded for Class Counsels' fees recoverable from the Settlement Fund because Mr. Yaker in his affidavit attached to the Petition exaggerated Mr. Tottis' bills by over ten percent and did not provide Mr. Tottis' bills with the Petition. Those bills consequently, could not be reviewed by counsel for the Plan and commented on in the Plan's counsel's response to the Petition. The court has had to scrutinize Mr. Tottis' bills without the benefit of the Plan's counsel's comments. In doing so the court has determined Mr. Tottis only spent 144 hours on this case through August 2001, not the 160 hours Mr. Yaker swore to in his affidavit. Candor with the court is not only an ethical obligation, it is a necessity for the proper administration of justice. Class Counsel's delay and lack of candor as to Mr. Tottis' bills is unacceptable.

2. Time Spent on Ms. White's Conflict as a Class Representative

It was clear as a matter of law that Ms. White serving as executrix for Mr. White's estate could not be a proper class representative, as this court held on April 13, 1998. Consequently the 59.3 hours and $12,943.50 in fees spent by Mr. Yaker in pursuing the meritless position that Ms. White could serve as the sole class representative was not in the best interests of the class and is not recoverable by Class Counsel. Accordingly, that 59.3 hours will be deducted from Class Counsels'

fee request.

3. Time Spent on Arnold's Certification as Class Representative

It was clear that Arnold was not a proper class representative until he had exhausted his administrative remedies under the Plan. Therefore, Class Counsel's opposition to defendant's motion to stay this case until Arnold had so exhausted was an unreasonable expenditure of time. Class Counsel spent 41.15 hours making and briefing a motion for class certification with Arnold as the class representative in the absence of his administrative exhaustion with the Plan. That was an unreasonable expenditure of Class Counsel's time and not in the best interests of the class. Accordingly, this court finds that Class Counsel undertook the 41.15 hours of work unreasonably. Therefore, based on the number of hours submitted by Class Counsel, this court will reduce the hours accordingly.

4. Time of People Not Appointed Class Counsel

Even though only Mr. Yaker was the only lawyer among those at his firm to file an appearance in this case and apparently the only lawyer at his firm to be a member of any bar of this federal district, the Petition names three people, Warren Perlove, Eva T. Cantarella, and Eric Michaels, who were not appointed to represent the Class but for whom Class Counsel seek fees. In addition to the fact that these people were not appointed by this court to perform legal services for the class, they are strangers to the court. They are not members of the bar and their names or credentials were never mentioned to the court before the filing of the Petition. There has been no showing that their work was a reasonable expenditure of time. The court will not award Class Counsel any fees for the alleged work of these strangers.

B. Hourly Rate

In the Petition, Class Counsel submitted a range of hourly rates as to each attorney for whom fees are sought. The Petition which dealt primarily with attorneys located in Bloomfield Hills, Michigan, provided no documentation to assist the court in determining the reasonable hourly rate charged in the Chicagoland area by attorneys of similar ability and experience conducting ERISA class action litigation, other than the hourly rates of Mr. Tottis whose legal practice is headquartered in Chicago. Within the last year, the Seventh Circuit affirmed a grant of $165 per hour in an ERISA case with Chicago counsel. Moriarity v. Svec., 233 F.3d 955, 965 (7th Cir. 2000). Because Class Counsel did not otherwise fulfill their obligation to provide any evidence of the attorneys' market rate in Chicago, see Harper v. City of Chicago Heights, 223 F.3d 593, 604 (7th Cir. 2000), other than their Chicago counsel's rate, the court will consider $220, the middle of the range from $210 to $230 per hour billed by Chicago counsel Mr. Tottis, to be a reasonable hourly rate for each of the Plaintiffs' Michigan counsel for whom fees are allowed.

C. The Lodestar Calculation in This Case

Having determined the reasonable hours expended by Class Counsel and having determined $220 to be a reasonable hourly rate based upon the information timely supplied by Class Counsel in the record, the court now calculates the lodestar for each Class Counsel:

| Attorney | Hours | | Rate | | Total |
|---|---|---|---|---|---|
| Bradford T. Yaker | 656.95 | x | 220 | = | $144,529 |
| Robert P. Geller | 160.10 | x | 220 | = | $ 35,222 |
| Bradley J. Schram | 75.60 | x | 220 | = | $ 16,632 |
| TOTAL HOURS | 892.65 | | | | |
| TOTAL ATTORNEYS' FEES | | | | | $196,383 |

D. Multiplier

In a case initiated under ERISA and settled with the creation of a common fund, such as the Settlement Fund here, a risk multiplier is not merely available but is mandated, if the court finds that Class Counsel had no sure source of compensation for their services. In re Continental Illinois Securities Litigation, 962 F.2d 566, 569 (7th Cir.1992). Moreover, the need for a multiplier is particularly acute in class action suits, since the lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent. Continental, 962 F.2d at 569; Florin v. Nationsbank of Georgia, N.A., 34 F.3d 560, 565 (7th Cir. 1994).

Against this background, this court will evaluate an appropriate multiplier considering a retroactive calculation of the probability of success as measured at the beginning of litigation. Cook v. Niedert, 142 F.3d 1004, 1013 (7th Cir. 1998). Additionally, this court will take into consideration the risk of non-recovery, the adeptness of the lawyers prosecuting this case, the potential of this case going to a bench trial or jury trial, and how the litigation of the case was ultimately completed, where a multiplier of 2 may be sensible ceiling. Id. Class Counsel argues that based upon the lack of case precedent and the complex statutory scheme, along with what Class Counsel claims was the Plan's zealous defense, yields a multiplier of 2.34.

In response, the Plan argues that a multiplier of 1.10 is appropriate in this case because a multiplier of 1.10 represents a ten percent risk of non-recovery. The Plan explains that Class Counsel's case was not unlikely to lead to a recovery, since this case was based on the literal language of the ERISA plan. In reply, Class Counsel argues that a multiplier of 2.34 adequately compensates them for a forty to fifty percent likelihood of success.

In this case, Class Counsel's biggest hurdle was finding an appropriate class representative. This administrative undertaking accounted for considerable amount of the total hours billed and did not display Class Counsel's adeptness. The second biggest task for Class Counsel was the filing for summary judgment. Where a case can be disposed of by summary judgment, the risk of non-recovery is considerably lower in comparison to a bench or jury trial. Furthermore, even though Class Counsel is correct that they lacked case law for their position, that did not add any difficulty because Class Counsel's position was based on an interpretation of the Plan as written. Since this case was based on an interpretation of the Plan language, the threshold legal issue on summary judgment was what amount of deference this court should give the plan administrator, a legal issue guided by case authority. Consequently, it should have been clear that to all counsel that this case would not go to trial, but instead, ultimately would be determined by each side's briefing its respective position for a determination by the court on summary judgment.

It is this court's position that a multiplier of 2 or above is more appropriate for counsel who have won a jury trial, a bench trial or at the appellate level. A multiplier between 1.5 and 2 is more appropriate for a case destined for trial, but is nonetheless settled in light of plaintiffs' counsel winning on summary judgment. A multiplier between 1 and 1.5 is more appropriate where a case settles but settles on the defendants' terms, the defendant having won on summary judgment. If a case settles after the defendant has won on summary judgment, the nuisance value of settling the case is worth more than pursing future litigation. To this end, a plaintiffs' counsel who, as here, did not prevail at the trial level but settled the case while the case was pending in the appellate court cannot expect to receive a multiplier of more than 1.5. Upon a complete review of this case, acting as a surrogate client, this court finds that a multiplier of 1.3 is appropriate in this case since Class

Counsel settled this case at the appellate court's door having lost on summary judgment here. A multiplier of 1.3 takes into account a likelihood of fifty percent recovery, the difficulty presented in this case, the administrative nature of this case, the fact that this case was best suited to be adjudicated on paper, and that a settlement occurred only after Class Counsel lost on summary judgment. Accordingly, the proper award to Class Counsel of reasonable legal fees in this case is as follows:

| Lodestar | | Multiplier | | Total |
|---|---|---|---|---|
| $196,383 | x | 1.3 | = | $255,298 |

When analyzed that computes to an hourly billing rate of $286 per hour for each Class Counsel for whom fees are allowed which is highly reasonable given the quality of lawyering shown.

III. Costs and Expenses

Class Counsel requested expenses of $17,256.25. The Plan argues that Class Counsel fails to include enough detail to satisfy a client that the expenses requested were necessary. The Plan combed through Class Counsel's bill questioning each expense for which the Plan could not determine the reasoning. Although the court believes more detail should have been provided, the amount and nature of the expenses listed by Class Counsel for reimbursement, meet the minimum level of detail that paying clients would probably find sufficient and reasonable to pay, except for the computer assisted research amounts which total $5690.30 discussed below.

The Plan disputes the $5690.30 in computer-assisted legal research Class Counsel requested be reimbursed. The Plan cites to Montgomery v. Aetna Plywood, Inc., 231 F.3d 399, 409 (7th Cir. 2000) and Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago, 38 F.3d 1429, 1440-41 (7th Cir.1994) to stand for the proposition that computer research charges are considered a form of

attorneys' fees. In Montgomery, the Seventh Circuit held that computer-assisted legal research essentially raises an attorney's average hourly rate as it reduces the number of hours that must be billed. 231 F.3d at 409. Accordingly, as a form of attorneys' fees, the charges associated with such research are not separately recoverable as expenses. Therefore, $5690.30 is appropriately subtracted from Class Counsel's expense bill since Class Counsel has already been compensated for the computer research charges through appropriateness of the reasonable attorneys' fees awarded. Accordingly, Class Counsel's reimbursable costs and expenses are as follows:

$17,256.25 - $5690.30 = $11,565.95

Therefore, the court's determination of the reasonable attorneys' fees, costs and expenses in this case is:

| | |
|---|---|
| TOTAL ATTORNEYS' FEES | $255,298 |
| COSTS | $ 11,566 |
| TOTAL ATTORNEYS' FEES AND COSTS | $266,864 |

CONCLUSION

For all the reasons stated herein, Class Counsel is awarded $266,864 in attorneys' fees, costs and expenses from the Settlement Fund.

ENTER:

James F. Holderman

JAMES F. HOLDERMAN
United States District Judge

DATE: October 9, 2001